## CHARLESTON

### MARTIN v. REINIGER.

Submitted May 26, 1914.   Decided June 9, 1914.

1. PARTIES—*Joinder*—*Necessity*—*Severance of Causes of Action.*
    Where one, by contract jointly bound to two, pays one of them, who accepts the same, his share of the common debt, this effects a severance thereof, whereby the other may alone sue for the share due him under such contract.   (p.442).

2. TRIAL—*Instructions.*
    A case wherein rulings on instructions are approved.   (p. 445).

Error to Circuit Court, Kanawha County.

Action by A. R. Martin against Charles P. Reiniger. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Linn & Byrne* and *Geo. S. Wallace,* for plaintiff in error.

*Townsend & Bock,* for defendant in error.

LYNCH, JUDGE:

Plaintiff recovered a verdict and judgment for commissions on sales of Mexican mining stock, under an agency therefor. Defendant denies liability on the two principal items in plaintiff's bill of particulars. The two sales in controversy

were of 25,000 shares to J. M. Boggs at fifty cents per share, 12,500 on February 22 and 12,500 on March 16, 1910.   Defendant claims these sales were made by himself alone, without the assistance of Martin.

The specific errors assigned arise upon instructions to the jury—numbers 1 and 2 given for plaintiff, number 1 for defendant, refused, and his instructions 2 and 3, which he claims the court erroneously modified before giving them.

By the first instruction given for plaintiff, the jury were told they should find defendant liable for the agreed commissions if they believed from the evidence he employed the plaintiff to sell the mining stock mentioned, and that "in pursuance thereof the plaintiff procured a customer for the sale of the property on the terms fixed by the defendant", although "the defendant during the pending of the negotiation made the sale himself"; and by the second, that they should so find if they likewise believed "the defendant employed the plaintiff as one of his agents to sell 25,000 shares" of stock, and "that after the defendant by assistance of plaintiff had sold to J. M. Boggs 12,500 shares" the plaintiff "continued his efforts to sell to the said J. M. Boggs the remaining 12,500 shares of stock, and such efforts assisted in procuring said sale, and that while he was negotiating with the said J. M. Boggs" for the last sale "the defendant made the sale of the same to the said J. M. Boggs".

The objection urged against the first instruction is that it assumes Martin, in pursuance of his contract of agency, procured Boggs as a purchaser, notwithstanding evidence that plaintiff first interviewed Boggs at the defendant's instance. But the instruction is expressly based on all the proof.   True, the record shows defendant had, through the abortive efforts of another agent made in 1909, obtained some information that Boggs was available as a probable purchaser.   But when Martin at defendant's request approached Boggs on February 10, 1910, no negotiations with him were then pending. Defendant had not then met him.   While Martin's first attempt to deal with Boggs was not successful, he did induce him to come to Charleston for a conference with defendant. At this conference, on February 22, 1910—Martin and Morford, another agent, being present—the first sale was made,

or rather an exchange of 12,500 shares of the mining stock for 50 shares of coal stock owned by Boggs. On the day following, defendant, by a written memorandum then signed by him, admitted there was due, because of the transactions of the previous day, $1250 to Martin and Morford as commissions at the rate of twenty per cent to each of them. · Morford has since been paid one half of that sum in settlement for his services as such agent. Martin is seeking recovery of his one half. As the evidence shows material assistance by Martin in affecting the sale, the instruction was proper and applicable to the proof.

The second instruction was intended to apply to the second exchange of 12,500 shares of the mining stock with Boggs for an additional 50 shares of coal stock. This exchange was effected on March 16, 1910, directly by correspondence between Boggs and defendant, without conference or interview with Boggs by either Martin or defendant after the transactions of February 22. It is contended, first, that the instruction erroneously assumes plaintiff was employed to sell the specific quantity of 25,000 shares of mining· stock. But the contract of agency prescribed no limit on the number of shares to be sold by Martin. For all that appears, the agency would have covered any amount sold by him. The commission was a fixed percentage on each particular sale. If 25,-000 shares were in fact disposed of to Boggs, how could defendant be prejudiced by the language of the instruction? In the second place, it is contended Martin in nowise assisted in the second exchange of stocks. The evidence does not so show. On the contrary, it appears Martin had much correspondence with Boggs after February 22 concerning the purchase of additional mining stock and the taking of coal stock therefor, and had kept the latter interested in the matter, and just prior to the transaction of March 16 turned over all this correspondence to defendant, who then closed the sale to Boggs. Again, it is said the instruction is bad, on the ground that Martin had no authority to exchange stocks but was to sell for cash only. The terms of the agency as to this phase of it do not appear. However, the record shows that in most of the sales by Martin to persons other than Boggs, covering a considerable period, notes were received in pay-

ment, without objection by defendant. With his knowledge, Martin had been negotiating with Boggs in reference to the coal stock prior to February 22; and defendant seemed willing and eager to effect the exchange which took place on that date.

The court did not err to defendant's prejudice by refusing his instruction number 1; because, in effect, the same proposition is announced in his instructions as modified and given. The modification of defendant's instruction number 2 was immaterial, except in so far as it rendered the instruction less obscure, and therefore less likely to mislead. For, although Reiniger did virtually make the second sale to Boggs, Martin materially assisted in its procurement. By correspondence he constantly kept in close touch with Boggs and the trade, and thereby aided in its consummation. While this element was wanting in the instruction as prepared, the court properly inserted it by the amendment. Nor did the court err in its modification of instruction number 3. As proposed, it would have advised the jury not to find any amount for plaintiff on the second sale to Boggs, if it believed that under the contract with Reiniger Martin and Morford were jointly interested in the commission on the first sale to him, when there is no evidence tending to show Morford did anything towards effecting the second sale or that he now claims any interest in commissions due thereon.

While the claim on which plaintiff sued was $3387.50, and the amount of defendant's sets-off $1978.37, the jury found for the former the sum of $1000. However, defendant included in his specification of sets-off $400 allowed by plaintiff as credits against his claim, and also $400 which in his testimony defendant admits has been paid. By excluding the credits and the $400 so paid, the jury evidently allowed other items claimed by Reiniger. Otherwise, its verdict would have exceeded the amount returned by it. Defendant nevertheless argues that the verdict is still excessive, and that, instead of being in favor of plaintiff, it should have been for him. But he bases his right of recovery on the theory that plaintiff can not maintain this action because of Morford's interest in the commissions on the first sale of mining stock to Boggs. That argument does not avail him, in view of the proof, indeed the

admission, that Morford received his share of that commission long prior to the institution of this action. All that was then due thereon thereby became payable alone to plaintiff. Having no further interest, Morford could not sue therefor. Besides, defendant virtually admits tender to plaintiff of a sum by him deemed sufficient compensation for the services rendered by plaintiff in effecting the first sale to Boggs, but which plaintiff declined to accept because less than the amount due him under the terms of the contract with defendant. The tender was, to that extent, a concession of liability to plaintiff. But defendant's payment to Morford, and Morford's acceptance of the sum paid, as full discharge of his share of the commission on the first sale, worked a severance, whereby plaintiff could alone maintain this suit and recover the share of the commission due him under the contract. For an interest joint at first may, by subsequent dealings, become several, so as to authorize a suit by one obligee without joining the others; especially where, as in this case, the severance results from the joint acts of defendant and Morford, to which plaintiff impliedly assented so far as he was concerned. *Beach* v. *Hotchkiss,* 2 Conn. 697; *Buckner* v. *Bedford,* 32 La. 206; *Railroad Co.* v. *Railroad Co.,* 49 Mass. 499; *Baker* v. *Jewell,* 6 Mass. 460; *Rice* v. *Laury,* 22 Ia. 470; *Parker* v. *Bryant,* 40 Vt. 291. Of the inclusion of the item due plaintiff for his share of such commissions defendant can not, under the circumstances, justly complain.

Finding no error, we affirm the judgment.

*Affirmed.*